**UNITED STATES of America, Plaintiff,**

v.

**Oliver HILL, and O.R. Hill Fuel Co., Inc., Defendant.**

**No. 95–CV–1716(GJD/NAM).**

United States District Court, N.D. New York.

May 30, 2000.

Lois J. Schiffer, Assistant Attorney General, U.S. Department of Justice, Environmental Enforcement Section, Washington, D.C., George A.B. Peirce, of counsel, Daniel J. French, United States Attorney, Syracuse, New York, for plaintiff.

Oliver R. Hill, Nedrow, New York, defendant pro se.

## ORDER

MORDUE, District Judge.

The United States commenced this action pursuant to Section 7003 of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 and Solid Waste Amendments of 1984 (collectively known as "RCRA"), 42 U.S.C. § 6901 *et seq.*

The basis for the action was a serious and destructive leak of gasoline from defendant Hill's gas station, located on the territory of the Onondaga Indian Nation. As a result of this spill, on March 3, 1995, the United States Environmental Protection Agency ("EPA") issued Hill an administrative order to, among other things, (1) post signs at and adjacent to the gas station to alert third parties to the hazards present; (2) assess the structural integrity of all underground storage tanks and asso-

ciated equipment; (3) initiate the repair or closure of any tank found to be corroded or subject to structural failure; and (4) undertake an environmental investigation and complete cleanup of soils and groundwater at and adjacent to the gas station. Hill has failed to comply with any of these requirements, as far as this Court can ascertain, to the present day.

As a result, the EPA brought suit to seek Hill's statutory liability for failing to obey the order. On May 20, 1998, then District Judge Rosemary S. Pooler[1] granted the United States' motion for partial summary judgment on this issue. The amount of the civil penalty to which Hill was subject, however, was left for another day. After Judge Pooler's elevation, this Court referred the issue to the Honorable Gustave J. DiBianco, United States Magistrate Judge. Judge DiBianco held a hearing on January 20, 2000, at which time the government offered evidence to support its entitlement to a penalty of a sum certain. Despite failing to pay court-imposed sanctions,[2] Judge DiBianco allowed Hill to participate and oppose the proposed penalty.[3]

On February 10, 2000, after hearing testimony from several government witnesses and receiving documentary evidence, the Magistrate Judge filed a Report–Recommendation ("R–R") with this Court that a civil penalty be imposed upon Hill in the amount of $4,746,500. Presently before the Court are defendant Hill's objections to the R–R. Hill objects on three grounds, all of which are lacking in merit.[4] Upon

---

1. Judge Pooler is now a Judge of the United States Court of Appeals for the Second Circuit.

2. The Court notes that Hill has failed to pay his court-imposed sanctions to this day. Defendant was first sanctioned and fined nearly one and a half years ago; he was sanctioned and fined a second time this past December. Defendant is required, at this time, to pay his court-imposed fines. His failure to do so in derogation of this Order may subject him to dire consequences. *See Huber v. Marine Midland Bank,* 51 F.3d 5 (2d Cir.1995).

3. Though Hill appeared at the hearing, he presented no evidence or witnesses on his behalf.

4. As noted by Judge DiBianco at the hearing, Hill attempts to be relitigating his liability, rather than the amount he must pay as a civil penalty. This is an inopportune time to do so, however. Hill's liability was previously established before Judge Pooler. The sole and specific question before both Judge DiBianco and this Court was and is the civil penalty this Court should impose upon Hill as a result of his failure to abide by the EPA's order. Each of Hill's objections can be and are construed as merely challenging his liabil-

careful, *de novo* review of the entire file, including the R–R, Hill's objections, the documentary evidence and the transcript of the hearing, the Court finds the civil penalty recommended by Judge DiBianco is entirely proper.

As noted by Judge DiBianco, irrespective of which method the Court uses to calculate the fine against Hill, the factors to consider include:

(1) the seriousness of the violation;

(2) the economic benefit resulting from the violation, or failure to comply;

(3) any past history of such violations;

(4) any good faith efforts to comply;

(5) the economic impact of the penalty on the violator; and

(6) such other matters as justice may require.

*See* R–R at 15 (and cases cited therein); 33 U.S.C. § 1319(d).

As this Court is able to ascertain from the record and transcript, Hill's violation was grave. His spill of an estimated ten thousand gallons of gasoline posed not only a significant health risk, but risk of explosion. The source of drinking water for several families, including those with children, was left poisoned and unfit for human consumption. Despite an order from the EPA requiring him to clean up the site, and warn those near the spill, among other things, Hill has entirely refused to comply. This is a violation of the most serious kind. Thus, the first prong tips heavily against Hill.

As to the second prong, this Court has reviewed testimony and evidence which indicates that Hill obtained substantial economic benefit from disobeying the EPA's order and failing to assist in the clean up of his spill. The evidence reveals that Hill obtained well over a million dollars of economic benefit as a result. Consequently, this prong also leans strongly against Hill.

As Judge DiBianco noted, at first blush the third prong appears to weigh in favor of mitigation, as there is no evidence that Hill ever disobeyed an EPA order before. Yet, in conjunction with the fourth prong, the Court finds no reason to reduce the amount of Hill's penalty. As noted by Judge DiBianco, Hill has made absolutely no good faith efforts to comply with the EPA's order. Indeed, though he never stood in the way of government attempts to clean up his property, he has refused to accept responsibility for the spill, and has never posted the required warning signs—a relatively simple task.

Significant and credible evidence was received as to the fifth prong, militating towards a very stiff penalty. Testimonial and documentary evidence establishes to this Court's satisfaction that Hill was and is a very wealthy man. This evidence established, without contradiction by Hill, that between 1988 and 1992, Hill made over five million dollars in deposits to financial institutions.[5] Aside from the millions of dollars of deposits, evidence was received that Hill was also paying significant amounts for life insurance—over ninety thousand dollars a year in life insurance premiums. This is strong evidence of Hill's wealth, and ability to pay a substantial fine. Despite the proof put forth by the government, Hill utterly failed to contest his wealth and earnings, and did not present any evidence that his financial condition changed since the time of the afore-

ity, rather than the recommendation rendered by Judge DiBianco as to the amount he should be required to pay.

**5.** As was discussed by Judge DiBianco, the Treasury Department requires financial institutions to report aggregate deposits of a depositor in excess of ten thousand dollars in one day. As a result of these reports, which the government keeps records of, the government demonstrated that Hill, or those associ-

ated with him, deposited more than five million dollars over a number of years. As such reports are only made of aggregate daily deposits of ten thousand dollars a day or more, the real amounts Hill may have deposited are in all likelihood far larger; there may be many daily deposits that were less than ten thousand dollars, and unreported to the Treasury Department.

mentioned deposit history. Indeed, even his objections fail to contest his ability to pay. Thus, as Judge DiBianco properly noted, "the only evidence before the court shows that Mr. Hill is a very wealthy man." R–R at 18.

This is not to say the fine recommended will be easily paid by defendant; the proposed fine of nearly five million dollars is substantial, and may have impact on even a person of great wealth. Nevertheless, one of the main purposes of the civil penalty sought is deterrence—both to Hill and others who might choose the path of wealth and greed over human decency. Perhaps Hill and others like him will not chose the errant path in the future. The maximum penalty sought by the government is appropriate.

Accordingly, Hill is liable for a civil penalty in the amount of $4,746,500. This is calculated as follows: $3,410,000 for 682 days of noncompliance with the EPA's order at the maximum statutory rate of $5,000 per day, and $1,336,500 for 243 days of noncompliance at the amended statutory maximum rate of $5,500 per day.

Having given careful, *de novo* review of the issue of Hill's civil penalty, the Court adopts the February 10, 2000 Report–Recommendation of Magistrate Judge DiBianco in its entirety.

Therefore, it is hereby

ORDERED that defendant Hill is liable for a civil penalty in the amount of $4,746,-500; and it is further

ORDERED that defendant Hill shall pay his court-imposed sanctions of $350 by June 30, 2000, or he shall show cause on July 5, 2000, at 11:30 a.m. why he should not be held in contempt of this Court. If defendant Hill fully pays this $350 amount by June 30, 2000, no contempt proceeding shall be necessary.

IT IS SO ORDERED.